IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANCIS TIMOTHY PLAZA, | : | |
| Petitioner, | : | 1:20-cv-1480 |
| | : | |
| v. | : | Hon. John E. Jones III |
| | : | |
| BARRY SMITH, *et al.*, | : | |
| Respondents. | : | |

**<u>MEMORANDUM</u>**

**MAY 25, 2021**

**I.** **<u>BACKGROUND</u>**

Francis Timothy Plaza ("Plaza"), a Pennsylvania state inmate currently incarcerated at the State Correctional Institution at Houtzdale, Pennsylvania, filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, on August 19, 2020, seeking relief from his state sentence of life in prison entered in the Court of Common Pleas of York County criminal case CP-67-CR-0005283-2009 on September 30, 2010. (Doc. 1; Doc. 7-3, pp. 1, 4). Because it appeared that the petition may be barred by the statute of limitations, in accordance with *United States v. Bendolph*, 409 F.3d 155, 169 (3d Cir. 2005) (*en banc*), on October 7, 2020, the Court directed the parties to address the timeliness of the petition and any applicable statutory and/or equitable tolling of the statute of limitations. (Doc. 6). On October 27, 2020, Respondents filed a Motion to Dismiss the petition as untimely. (Doc. 7). Plaza had not responded to the Order.

On January 4, 2021, we issued a Memorandum (Doc. 8) and Order (Doc. 9) dismissing the petition as untimely. On January 27, 2021, Plaza filed a motion pursuant to Federal Rule of Civil Procedure 60(a) "Corrections Based on Clerical Mistakes, Oversights and Omissions" contending that he did not receive Respondents' Motion to Dismiss and seeking additional time to respond to the motion. (Doc. 10). We held the Rule 60(a) motion in abeyance and directed Respondents to forward the motion to Plaza. We also afforded him until May 5, 2021, to respond to the motion. (Doc. 11).

On April 29, 2011, Plaza filed a brief in opposition to the motion. (Doc. 13). While there is nothing in the opposition brief that alters the prior determination that the petition is untimely, we vacate the prior Memorandum (Doc. 8) and Order (Doc. 9) and issue this memorandum and attendant order to reflect consideration of Plaza's submission and to avoid any confusion concerning the applicable appeal date. We also deny Plaza's Rule 60(a) motion as there is no clerical mistake or mistake arising from oversight or omission in the prior judgment, order, or other part of the record. FED.R.CIV.P. 60(a).

## II. STATE COURT PROCEEDINGS

The pertinent state court factual and procedural history set forth below is extracted from the June 16, 2020 Memorandum filed by the Superior Court of Pennsylvania:

On July 25, 2009, Appellant shot his wife, Michelle Plaza, six times, killing her in their bedroom. He was arrested and charged with criminal homicide. At trial, he testified he was upset with his wife because she was constantly on the computer and not spending enough time with him. Prior to the shooting, the two engaged in a lengthy conversation in their bedroom. Appellant had earlier taken his gun from his dresser drawer with plans to secure it before possibly leaving for New York for the weekend. In the course of their conversation, Michelle announced she was leaving Appellant and he became enraged. His hand brushed the nearby gun and the next thing he knew, he was holding the gun in his hand and Michelle was dead, though he did not remember shooting her.

A jury convicted Appellant of first-degree murder and, on September 30, 2010, he was sentenced to life in prison. This Court affirmed his judgment of sentence. On December 3, 2012, our Supreme Court denied allowance of appeal.

On October 9, 2013, Appellant timely filed his first PCRA petition. Counsel was appointed and filed an amended petition. Following an evidentiary hearing, the PCRA court denied the petition. On February 19, 2015, we affirmed. Appellant did not file a petition for allowance of appeal. Appellant filed *pro se* motions in August 2015 and July 2016 claiming, *inter alia*, that counsel was ineffective for failing to file a petition for allowance of appeal. The PCRA court denied both motions.

On April 10, 2017, counsel filed a motion for leave to file a petition for allowance of appeal *nunc pro tunc*. On May 22, 2017, the Supreme Court denied the petition.

On June 8, 2017, Appellant filed a *pro se* PCRA petition alleging PCRA counsel ineffectiveness for failing to file a petition for allowance of appeal. The PCRA court denied the petition as untimely on December 18, 2017.

As the PCRA court explained in its October 4, 2019 opinion, during 2017 and 2018, Appellant filed numerous grievances relating to PCRA counsel's "abandonment." He then filed a motion for a *Grazier* hearing on November 7, 2018, complaining he was precluded from

3

> advocating on his own behalf because Attorney Dubbs was still noted as attorney of record. Opinion, 10/4/19, at 4.
>
> The court conducted a *Grazier* [n. 2, *Commonwealth v. Grazier*, 713 A.2d 81, 82 (Pa. 1998)] on January 3, 2019 and granted Appellant's request, removing Attorney Dubbs as counsel. On January 15, 2019, Appellant filed a request for appointment of counsel, which the PCRA court denied on January 25, 2019. Appellant filed an appeal to this Court. On July 1, 2019, we quashed the appeal as one taken from an interlocutory order.
>
> Meanwhile, on June 3, 2019, Appellant filed a motion to reinstate appeal rights *nunc pro tunc*, followed on July 2, 2019, by a motion for disposition of his motion to reinstate. The court treated Appellant's motion as a PCRA Petition and, on August 22, 2019, issued a Rule 907 notice of its intent to dismiss the petition. On August 30, 2019, Appellant filed a response to the Rule 907 notice.
>
> On October 4, 2019, the court issued an order dismissing the motion. In its accompanying opinion, the court explained that the June 3, 2019 motion was untimely filed from a judgment of sentence that became final on March 3, 2013 and that Appellant did not plead an exception to the PCRA's timeliness requirements. This timely appeal followed. Both Appellant and the PCRA court complied with Pa.R.A.P. 1925.
>
> Appellant presents one issue for our consideration:
>
>> [1.] Was Appellant's constitutional right of appeal denied where counsel failed to file timely [petition for allowance of appeal], and did the court err in failing to determine counsel's ineffectiveness and abandonment for appeal?
>
> Appellant's Brief at 3.

(Doc. 7-12 pp. 2-4). In affirming the PCRA court's determination, the Superior Court stated "Appellant fails to appreciate that the PCRA's timeliness requirements are jurisdictional in nature. His June 3, 2019 petition was clearly

4

untimely and he neither pled nor proved any exception to the timeliness requirement.. Therefore, neither the PCRA court nor this Court has jurisdiction to consider the merits, if any, of the petition." (*Id.* at p. 6).

Plaza filed the instant petition on August 19, 2020.

## III. DISCUSSION

The court shall "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A petition filed under § 2254 must be timely filed under the stringent standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See* 28 U.S.C. § 2244(d)(1). Specifically, a state prisoner requesting habeas corpus relief pursuant to § 2254 must adhere to a statute of limitations that provides, in relevant part, as follows:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
>    (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> ...
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

5

28 U.S.C. § 2244(d)(1)-(2); *see Jones v. Morton*, 195 F.3d 153, 157 (3d Cir. 1999).

### A. Computation of the Statute of Limitations

Under the plain terms of § 2244(d)(1)(A), a state court criminal judgment does not become final until appeals have been exhausted or the time for appeal has expired. *See Nara v. Frank*, 264 F.3d 310, 314 (3d Cir. 2001). The courts have construed this tolling provision in a forgiving fashion, and in a manner that enables petitioners to toll their filing deadlines for the time periods in which they could have sought further direct appellate review of their cases, even if they did not, in fact, elect to seek such review. Thus, with respect to direct appeals, the statute of limitations is tolled during the period in which a petitioner could have sought United States Supreme Court review through a petition for writ of certiorari, even if no such petition is filed. *Jimenez v. Quarterman*, 555 U.S. 113, 119 (2009). The trial court sentenced Plaza on September 30, 2010. The Supreme Court of Pennsylvania denied allocator on November 9, 2012. (Doc. 7-5, p. 3).[1] Plaza's conviction became final ninety days later. The one-year period for the statute of limitations commenced running as of that date, February 7, 2013, and expired one year later. Hence, the federal petition, which was filed on August 19, 2020, is clearly untimely.

---

[1] In its June 2020 Memorandum quoted *supra*, the Superior Court indicated that the Supreme Court entered its order denying Plaza's Petition for Allowance of Appeal on December 3, 2012. However, the Supreme Court's docket cites a disposition date of November 9, 2012.

However, the limitation period is not "an inflexible rule requiring dismissal whenever AEDPA's one-year clock has run." *Day v. McDonough*, 547 U.S. 198, 208 (2006). "Instead, the limitation period is subject to both statutory and equitable tolling." *Jenkins v. Superintendent of Laurel Highlands*, 705 F.3d 80, 85 (3d Cir. 2013).

### B. Tolling Exceptions

#### 1. <u>Statutory Tolling</u>

Section 2244(d)(2) tolls the one-year statute of limitations with respect to the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). As noted *supra*, the statute of limitations began running on February 7, 2013, and, absent any tolling, expired on February 7, 2014. On October 9, 2013, after the passage of 244 days, Plaza filed his first PCRA petition, which tolled the statute of limitations. The PCRA court denied relief on February 11, 2014. (Doc. 7-6, p. 2). The Superior Court affirmed the denial on February 19, 2015. (*Id.* at 3). He did not pursue an appeal at that time.

On August 12, 2015, after the passage of 174 more days, he filed a second PCRA. However, at that point, the statute had already expired. This PCRA cannot operate to toll an already expired statute of limitations. *See Long v. Wilson*, 393 F.3d 390, 395 (3d Cir. 2004) (finding that petitioner's untimely PCRA petition did

not statutorily toll the statute of limitations because, *inter alia*, "the limitations period had already run when it was filed").[2]

His fifth, and most recent petition, in which he attempted to reinstate prior appellate rights, was filed on June 3, 2019. (Doc. 7, p. 6, ¶ 37). The PCRA court dismissed the petition as untimely. (*Id.* at ¶ 39). On June 16, 2020, the Superior Court affirmed the denial of the PCRA as untimely. (Doc. 7-12). It is well-settled that an untimely petition is not "properly filed" and, therefore, does not toll the statute of limitations. *See Pace v. Diguglielmo*, 544 U.S. 408, 417 (2005) (holding that "[b]ecause the state court rejected petitioner's PCRA petition as untimely, it was not 'properly filed,' and [petitioner] is not entitled to statutory tolling under § 2254(d)(2)"); *see also Merritt v. Blaine*, 326 F.3d 157, 167-68 (3d Cir. 2003). Plaza is unable to avail himself of statutory tolling.

### 2. Equitable Tolling

Plaza "has not and does not argue that the instant 2254 is timely, to the contrary, [he] avers that that statutory [sic] limitations should be equitably tolled." (Doc. 13). Equitable tolling of the limitations period is to be used sparingly and only in "extraordinary" and "rare" circumstances. *See Satterfield v. Johnson*, 434 F.3d 185, 195 (3d Cir. 2006); *LaCava v. Kyler*, 398 F.3d 271, 274-75 (3d Cir.

---

[2] Plaza's second petition, and a third petition, filed on July 28, 2016, were dismissed based on his collateral attempt to reinstate, *nunc pro tunc*, allocatur on his first PCRA. On May 22, 2017, the Pennsylvania Supreme Court denied leave to file allocatur *nunc pro tunc*. (Doc. 7, p. 5, ¶ 28).

2005). It is only in situations "when the principle of equity would make the rigid application of a limitation period unfair" that the doctrine of equitable tolling is to be applied. *See Merritt*, 326 F.3d at 168 (3d Cir. 2003). Generally, a litigant seeking equitable tolling must establish the following two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace*, 544 U.S. at 418.

With respect to the diligent pursuit of rights, petitioner must demonstrate that he or she exercised reasonable diligence in investigating and bringing the claims. *See Robinson v. Johnson*, 313 F.3d 128, 142 (3d Cir. 2002). Mere excusable neglect is not sufficient. *See LaCava*, 398 F.3d at 276. Moreover, "the party seeking equitable tolling must have acted with reasonable diligence throughout the period he seeks to toll." *Warren v. Garvin*, 219 F.3d 111, 113 (2d Cir. 2000) (quoting *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000)).

Extraordinary circumstances have been found where (1) the respondent has actively misled the petitioner, (2) the petitioner has in some extraordinary way been prevented from asserting his rights, (3) the petitioner has timely asserted his rights mistakenly in the wrong forum, or (4) the court has misled a party regarding the steps that the party needs to take to preserve a claim. *See Jones*, 195 F.3d at 159; *Brinson v. Vaughn*, 398 F.3d 225, 230 (3d Cir. 2005).

In "Appendix Six", Plaza contends that the statute of limitations should be equitably tolled based on PCRA counsel's failure to appeal the Superior Court's affirmance of the PCRA court's denial of relief. (Doc. 5-1, pp. 41-60; Doc . 5-2, pp. 1- 19). Plaza states that upon becoming aware that the Superior Court affirmed the PCRA court's denial of relief, he "ordered counsel to file an Allowance of Appeal, consequently counsel did not respond or act." (Doc. 5-1, p. 47). (*Id.*). in his opposition brief, he states that he "wrote counsel numerous times inquiring to the appeal's progress; counsel did not respond; ultimately, the Superior Court affirmed on February 19, 2015." (Doc. 13, p. 2, ¶ 2). He further indicates that on June 13, 2015, he wrote to the Pennsylvania Supreme Court inquiring about the status of allowance of appeal, but the Prothonotary informed him that no petition for allocator had been filed on his behalf. (*Id.* at ¶ 6). He claims that "in an act of diligence," he filed a second PCRA specifically raising counsel's abandonment. (*Id.* at ¶ 7). According to the state court docket, the second PCRA was filed on August 12, 2015. *See* https://ujsportal.pacourts.us/Report/CpDocketSheet?docketNumber=CP-67-CR-0005283-2009&dnh=wzoDazaTzstc6Xdm1jmGYw%3D%3D

There is no evidence to support Plaza's statement that he instructed Attorney Dubbs to pursue a petition for allowance of appeal to the Pennsylvania Supreme Court after learning that the Superior Court affirmed the denial of relief. The only

10

correspondence between he and Attorney Dubbs contained in the record is a February 17, 2015 letter which states as follows:

> February 17, 2015
>
> Dear attorney Dubbs:
>
> I pray that this letter finds you well.
>
> This will be one of many letters I have written to you, and as this date you have not responded. And although you have told my family members that you have, that would not be true. I am currently left in the dark concerning the status of my case. Please respond back to this letter letting me know: (1) the current status of my case (along with copies of anything filed as of this date); (2) the status of the appeal (with appeal number).
>
> I also ask that you provide me with any appellate briefs filed. Absent your responding at this time would be telling of a conflict. I pray that although you are court appointed that you still give me the attention you would if I were retaining you as paid counsel.
>
> Again I look forward to you response and the requested information. Thank you for your help in my case. It is truly appreciated, do not think that it is not. Remember I am serving a life sentence!
>
> Respectfully yours,
>
> Francis T. Plaza

(Doc. 5-2, p. 5). This correspondence pre-dates the Superior Court's February 19, 2015 decision affirming the PCRA court's denial of collateral relief. Although the letter does demonstrate that Plaza was displeased with the lack of Dubbs' responsiveness, and was questioning whether he was acting in his best interest, it does not speak to whether Plaza, in fact, communicated to Dubbs that he wanted

11

him to pursue an appeal to the Supreme Court. His representation that he instructed Dubbs to pursue an appeal is also at odds with his contention that counsel failed to notify him of the Superior Court's decision and that he only became aware of it when he wrote to the Superior Court. (Doc. 5-1, p. 47; Doc. 13, p. 2, ¶¶ 4, 5).

Despite his reservations, and the fact that counsel failed to notify him of the Superior Court decision, Plaza did not initiate an inquiry on the status of his Supreme Court appeal until June 13, 2015, 114 days after the Superior Court's decision.[3] (Doc. 5-1, p. 47; Doc. 13, p. 2, ¶ 6).

We simply cannot conclude that Plaza diligently pursued his rights. Initially, he allowed 244 days to pass before pursuing PCRA relief. Then, despite having reservations about counsel's responsiveness, he waited until June 13, 2015, to inquire of the Supreme Court as to whether he had an appeal pending. At this point, all but seven days of the federal statute of limitations had run.

We also cannot ignore that under Order 218, Plaza had the ability to proceed to federal court immediately after the Superior Court issued its February 19, 2015 decision, more than five years before he filed his federal petition. Pursuant to Order 218 of the Pennsylvania Supreme Court, review of criminal convictions and

---

[3] The Supreme Court informed him on June 22, 2015, the he "may file a Petition for Leave to File a Petition for Allowance of Appeal *Nunc Pro Tunc*". (Doc. 5-2, p. 7). Ultimately, the Supreme Court denied relief.

post-conviction relief matters from the Pennsylvania Supreme Court is discretionary and 'unavailable' for purposes of exhausting state court remedies under § 2254." Therefore, in Pennsylvania a federal claim may be exhausted by presenting it to the Superior Court of Pennsylvania, either on direct appeal from a state criminal conviction or on appeal from a PCRA court's denial of post-conviction relief. *Lambert v. Blackwell*, 387 F.3d 210, 233 (3d Cir. 2004).

Based on the above, we conclude that equitable tolling of the AEDPA statute of limitations is not warranted in this case.

## III. CONCLUSION

For the reasons set forth above, the petition for writ of habeas corpus will be dismissed as untimely.

## IV. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322 (2003).

"When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, jurists of reason would not find the disposition of this case debatable. Accordingly, a COA will not issue.

    The Court will enter a separate Order.